No. 3350

Second Circuit

GOODSON v. SCHUSTER'S WHOLESALE PRODUCE CO., INC.

(March 12, 1929.   Opinion and Decree.)
(April 8, 1929.   Rehearing Refused.)

Cook and Cook, of Shreveport, attorneys for plaintiff, appellee.

Barnette and Roberts, of Shreveport, attorneys for defendant, appellant.

ODOM, J. Plaintiff brings suit to collect damages for the destruction of his automobile and for personal injuries resulting from a collision between his automobile and a large motor truck, owned by defendant and operated by one of its servants, which collision took place in daytime on the Shreveport-Minden public highway. He charges negligence on the part of the driver of defendant's truck. Defendant admits the collision and that plaintiff was injured to some extent, but denies liability on the ground that its driver was free from fault, and alleges that the collision and resulting damage were caused solely through the fault and negligence of plaintiff, who was driving his own car. The case was tried before a jury and resulted in a verdict for plaintiff for $2500.00, which verdict was approved by the Court. Defendant appealed, and plaintiff in this Court moved to amend the judgment by increasing the amount.

## OPINION.

Plaintiff's automobile, which he was driving, and defendant's truck, driven by an employee, were running in opposite directions in open daylight on a public highway. The two vehicles met and collided at a place where the highway is approximately 30 feet wide and where there was nothing to obstruct the view of either driver. In support of his claim, plaintiff testified that he was driving his automobile at 30 to 35 miles an hour on his right hand side of the road when he saw approaching him from the opposite direction defendant's truck, which was on the same side of the road—that is, on the truck driver's wrong, or left side. He says he assumed, as he thought he had a right to do, that the truck driver would see him approaching and would turn to the right and get over on his side of the road in time to avoid a collision. Observing, he said, that the driver of the truck apparently did not see him, or at least was making no move to pull over to his side of the road, plaintiff checked his speed to about 10 or 12 miles per hour, still thinking the driver of the truck would turn; but that when it became evident that the approaching vehicle would not turn, his first thought was to turn to the right in order to avert a collision, but saw that there was not sufficient space on that side to pass, and, observing that the road was on a dump four to six feet high and that if he turned to the right he would run off into a ditch, and further seeing that if he stopped, the truck would necessarily run into his car head on, he concluded that his only chance to avoid a collision was to turn sharply to his left, accelerate his speed and pass the truck over on his left side of the road, and that he adopted that expediency. He thinks he would have been successful but for the fact that about the time he turned to the left, the driver of the truck turned to the right, which threw the two vehicles together over on the other side of the road.

Plaintiff's testimony as to what happened and how it happened is corroborated in every detail by Mr. Edwards, who was with plaintiff in his car at the time and who was also injured.

Defendant's version of the case, as given by the truck driver, Vaughn, is that the truck was being driven on its right side of the road and that plaintiff was driving on that side also, or on his wrong side; and that when the truck driver saw that there was not sufficient room over on that

side for plaintiff to pass, he swerved his vehicle to the left, but not in time to avert the collision. So that the testimony of plaintiff and his companion, Edwards, on the one side, and that of the truck driver on the other, as to which side of the road the two vehicles were on as they approached each other, is contradictory. As this is a vital point, it is necessary to go further and see what other witnesses say, as well as to note the physical facts with reference to the position of the vehicles on the road when they came to rest after the collision.

There were in all eleven persons who were either present or nearby when the collision took place, and who gave testimony directly touching this point, viz., Goodson, the plaintiff, Edwards, his companion, Vaughn, the truck driver, Mrs. Vastocou, J. J. Harvill, T. C. Harvill, J. G. Willis, Charley Lott, W. H. Perry, Jack Allen and Kavanaugh.

We have already detailed the testimony of plaintiff and his companion, Edwards, and that of Vaughn, the truck driver. Of the other eight, Mrs. Vastocou, J. J. Harvill, T. C. Harvill, J. G. Willis and Charley Lott, all testified that they were eyewitnesses and were positive that the truck was running on its left, or wrong side of the road, and that plaintiff was on his right side. The other three, W. H. Perry, Jack Allen and Kavanaugh, testified to the contrary.

We therefore have seven witnesses who support plaintiff's side, and four who support that of defendant. Assuming that these witnesses are of equal credibility and had equal opportunity to observe, we might rest this case here under the theory that the preponderance of the testimony is with the plaintiff. Aside, however, from the testimony of these witnesses as to what they saw of the vehicles before they collided, the physical facts wholly corroborate plaintiff's side.

The highway runs east and west, and plaintiff was travelling east, so that his place was on the south side of the road. Defendant's truck was going west, and its place was on the north side. It is undisputed that the collision took place over on the extreme north side of the road and that the right hand front spring and fender of the truck struck the rear right wheel of plaintiff's car. It was not a head on collision. The front part of plaintiff's car was not touched, but was struck on the right side at the rear end, the right rear wheel being completely demolished and the gasoline tank punctured. The vehicles, therefore, met at an angle. Plaintiff accounts for this by saying that in order to avoid a head on collision with the truck, he swerved his car over to the left and tried to pass on the north side of the road and that when struck, he was going at an angle across the road in a northeasterly direction. That would account for the angle at which the vehicles went together. If plaintiff had been on the north, or his left side of the road, going straight ahead, and if defendant's truck had also been on that side, as defendant contends, there would have been a head on collision if the truck had gone straight. And, if the truck driver had swerved to the left towards the middle of the road, as he says he did, his right spring and fender could not have struck the rear right wheel of plaintiff's car. Furthermore, Mr. Phillips, sheriff of Webster parish, went to the scene as soon as he heard of the accident, and found the truck and the automobile in the road as they stood when they came to rest. He testified that the truck stood diagonally across the road at an angle of about twenty-five degrees, fronting north-

west with its front end three or four feet from the north edge of the road, and its rear end ten feet from that side. His testimony to that effect is corroborated by that of every other witness who took the stand; even the witnesses, Perry, Kavanaugh and Allen, who testified that plaintiff was running on the north, or his wrong side and that the truck was also on that side, testified, and, while on the stand, made diagrams showing that the truck when it stopped was headed towards the north side of the road. Their diagrams show a greater angle than that estimated by Mr. Phillips.

Now plaintiff and Edwards say that about the time they turned to the left, the driver of the truck apparently waked up, saw them and turned to his right. This testimony, together with the physical facts above noted, show beyond question that at the moment· of the collision the truck was headed to the right, across the road towards the north side. This testimony further shows that the truck carried a trailer which, when it stopped, was so far over on the south side of the road that it had to be moved in order to allow cars to pass on that side.

Counsel for defendant, in order to account for the position of the truck, say that plaintiff in attempting to cross the road in front of it, ran into its front end and dragged it, thereby leaving the truck diagonally across the road. But there were no skid marks in the road to show that; and then the truck was much the heavier of the two vehicles and it is doubtful if the automobile could have turned it to that angle. Again, if the truck driver had not been on the wrong side of the road, there would have been no occasion for plaintiff to attempt to pass it over on that side.

Defendant attempted to prove that plaintiff was running his car at an excessive rate of speed, lost control of it, and that his negligence in that respect caused the collision. Defendant, however, failed to prove to our satisfaction that plaintiff was operating his car at an excessive rate of speed at the time and just before the collision took place.

The testimony shows beyond question that the truck was running on the wrong side of the road. The driver had not slept at all during the previous night. He left Shreveport at 10 o'clock with a load of freight and carried it to Ruston, some 75 miles. After delivering the freight, he at once started on his return trip to Shreveport. From the way he operated the truck, he was, we think, either asleep at the wheel or was so groggy that he was paying little if any attention to the road. We doubt if he saw the approaching car at all until the horn was sounded immediately in front of him.

In this country, there have been established by long continued customs and usages, certain rules regarding the rights and duties of those operating vehicles on public highways. These rules and regulations are commonly referred to as "the law of the road." Under the law of the road, those driving automobiles on public highways, on meeting another vehicle, must, if on the left side or in the center of the road, turn to the right. A failure to do so constitutes negligence unless there are conditions or circumstances which make such move dangerous or impracticable.

Bragdon vs. Kellogg, 18 Me. 42, 105 Atlantic 433, 6 A. L. R. 669; 13 R. C., 286-288.

In the case at bar, defendant's truck

was on the wrong side. On meeting plaintiff's car, the driver failed to turn in time to avert the collision, and no reason has been or can be suggested why he should not have done so. He was, therefore, negligent, and that negligence was the efficient, prime cause of the collision and resulting injury.

Plaintiff in leaving his side of the road and attempting to cross over to the left in order to pass the truck on the other side, was not negligent under the circumstances. He acted under an emergency created by defendant and used his best judgment. The sudden emergency and peril did not arise because of his own negligence. The testimony shows that there was not sufficient space for him to pass the truck on the right and that, had he turned to the right, he would have gone over an embankment into a ditch. It furthermore shows that the appearances were such as to convince a reasonably prudent man that, if plaintiff had stopped his car on his right side of the road, it would have been run over by the truck. His last clear chance, therefore, to avoid a collision was to turn to the left.

It may be argued that plaintiff, having seen the truck at some distance approaching on the wrong side of the road, could and should have turned before he did and thereby averted the collision, or that he should have stopped his automobile on his side of the road. But, as already stated, the appearances were such as to cause a reasonably prudent man to believe that if he stopped the truck would run over him. As to whether he should have turned to the left sooner than he did, it must be said that he had a right to assume that the driver would observe the law and turn to his side of the road. We quote the following from Blashfield's "Cyclopedia of

Automobile Law" (1927), Vol. 1, pages 415 and 416:

"A traveler on the public highway, proceeding on the right-hand side and meeting a person traveling on the wrong side, may assume that that person will do everything reasonably possible to avoid a collision, and is not himself responsible for the consequences of any ensuing collision, if he does all that a reasonably careful person would have done to prevent it. * * *

"A motorist has a right to assume that the driver of a vehicle coming from the opposite direction will obey the law, and to act upon such assumption in determining his own manner of using the road; and a driver, therefore, proceeding on the right side of the traveled way, may assume that the driver of a vehicle approaching on the same side, or on his left-hand side, will yield half the way, or will turn out in time to avoid a collision, and not force him, in violation of the statute or ordinance, or the law of the road, to turn from the part of the road on which he is lawfully driving, until he sees or ought to see, that such assumption is unwarranted."

Defendant's driver did finally turn to the right. But he did not do so before plaintiff had a right to believe that he would not turn. Plaintiff was not negligent in turning to the left.

"One compelled to turn to the left and wrong side of a road to avoid a collision because of another person's violation of the law of the road, is not negligent." Potter vs. Glassell, 146 La. 687, 83 So. 898.

See also the following decisions from other states:

Hammer vs. Connecticut Co., 94 Conn. 127, 108 A. 534;

Saylor vs. Taylor, 42 Cal. App. 474, 183 Pac. 843;

Clark vs. Woop, 159 App. Div. 437, 144 N. Y. S. 595;

McFern vs. Gardner, 121 Mo. App. 1, 97 S. W. 972;

Columbia Taxicab Co. vs. Roemmich, (Mo. App.) 208 S. W. 859.

## ON THE QUANTUM OF DAMAGE.

Plaintiff asks that the judgment be amended so as to increase the allowance to $8000.00. This would be excessive. However, we think that the amount allowed is inadequate. Plaintiff testified that his car was rendered worthless and that is not disputed. He paid $1420.00 for it and had run it about eight or nine thousand miles. He said it was worth $1000.00 and his estimate is not contested. He paid medical and sanitarium bills amounting to $125.00. He was disabled and could not work for some three or four months. As he was not a salaried man, but an oil scout, we cannot tell how much he would have earned, but we have no doubt that he would have earned something for he said he made $3000.00 during the month preceding his injury.

A piece of glass punctured the front of his neck, leaving a visible scar; this was a deep, ugly wound. Dr. Benton stated that if it had been one-eighth of an inch deeper it would have caused his death. Plaintiff had a large, deep gash extending from the back of his head down on the neck, and this left a scar. These scars, Dr. Benton said, may diminish some, but will not disappear. His right ear was torn and lacerated and there were other minor cuts or punctures on the body. His left wrist was injured and of this injury Dr. Benton said:

"He had a pretty deep cut across the anterior part of his left wrist; this cut was deep also, and severed about four tendons, or four muscles in this wrist joint, just immediately back of the hand and they were sutured and put in splints."

As a result of that wound, Dr. Benton said:

"He has some impairment of the function there, but we are very much pleased with the results."

The doctor said he was pretty badly shocked, lost quite a bit of blood and that it took quick action to prevent him from bleeding to death. The above described wounds were sutured, or sewed up, a local anaesthetic being used.

After reaching the sanitarium, plaintiff was finally quieted by an injection of morphine. He remained in the Minden Sanitarium for ten days, during a portion of which time he showed signs of intense suffering, especially during the first eight or ten hours, and thereafter while the wounds were being dressed. Plaintiff was removed to his own home where he remained for some time. Dr. Benton, his physician, stated that his wounds had left no permanent injuries or impairments, except that the scar on the front of his neck would give him some trouble, especially in shaving, and that there was a slight impairment of the left hand.

For his injuries, suffering and loss of time, we think plaintiff is entitled to $2000.00; this amount added to the value of the car, and the amount of the medical and sanitarium bills paid, makes a total of $3125.00.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be amended so as to increase the amount from $2500.00 to $3125.00; and, as thus amended, the judgment is affirmed, with all costs.