Statement of the Case.
MONROE, C. J.
Plaintiffs (including two minors), availing themselves of a previous *187 homestead entry and settlement, made by their ancestor, John A. Russell, obtained from the United States government, on September 26, 1906, a patent to a tract of land described as the N. W. 14 of S. W. Yé, and N. E. 14 of S. W. Yé, and fractional S. W. Yé of N. W. Yé of section 3, township 20 N., range 16 W., in Caddo parish; and on April 15, 1911, they brought this suit, alleging: That the Atlanta & Shreveport Oil & Gas Company has pretended to lease a portion of the tract to the Producers’ Oil Company, and has put that company in possession of the same (with the right to extract the mineral products therefrom); that the Producers’ Oil Company, acting under its pretended lease, has drilled upon the land a well, Known as “Atlanta No. 1,” from which it has taken 800,000 barrels of oil, of the value of $400,000; that the portion of the tract pretended to be included in the lease and upon which the well has been drilled is “a parallelogram, the eastern boundary of which is the eastern line of said N. E. 14 of S. W. Yé of section 3, * * * ” which runs 29 feet east of said well, and the western boundary of which is 10 feet west of said well, and 39 feet west of said eastern boundary, and the north and south boundaries of said parallelogram are the north and south lines of said tract.
They further allege that the two companies hold the property under a claim of title, and refuse to surrender it, and they pray for:
“Judgment, in solido, against defendants, recognizing and decreeing your petitioners to be the owners of the said above-described property, now in possession of defendants, and for judgment ordering petitioners to be placed in possession thereof and quieting their title thereto, and for further judgment against the said defendants, in solido, in the sum of $400,000 with legal interest thereon from judicial demand; and for judgment reserving plaintiff's right to claim and sue for the oil extracted from the said land during the pendency of this suit.”
Various exceptions were filed and overruled, and defendant Atlanta & Shreveport Oil & Gas Company answered, denying, generally, the allegations of plaintiff’s petition, setting up title, in itself, to the S. E. Yé of section 3, township 20 N., range 16 W. (being the land lying immediately to the eastward of that claimed by plaintiffs), alleging that W. I-I. Wadkins, its author in title, had been in possession thereof for more than 10 years, “by lines fixed by himself and the adjacent owner, J. A. Russell,” and calling him in warranty. The Producers’ Oil Company then answered, admitting plaintiffs’ title to the N. E. Yé of the S. W. % of section 3, and alleging that it holds a lease from plaintiffs of the tract so described and is entitled to the oil extracted therefrom, “subject to a royalty, due plaintiffs, of Ya, up to 250 barrels, Y& on the excess, up to 300 barrels, and, if more than 300 barrels, % of the whole production saved upon the premises.” It further sets up a lease from the Atlanta & Shreveport Oil & Gas Company of the S. E. Yé of the section and calls that company in warranty, as to plaintiffs’ claim.
The main issue upon the trial was, not whether plaintiffs are the owners of the tract, and parallelogram, which they describe as located therein, but whether the well in question has been drilled upon that land, - or upon the S. E. Yé of the section.
The testimony adduced, on that issue, was that of surveyors, exclusively. Mr. W. E. Martin had been employed by plaintiffs to find and establish the line between their property and that of defendants, and had spent a month or more in the prosecution of the work, and, after the institution of the suit, he was appointed by the court to make a survey on behalf of plaintiffs. Mr. H. H. Jenkins,.as we understand, had been similarly employed by defendants, and Mr. W. E. Barnes was appointed by the court to make a survey on behalf of defendants. Messrs. Charles D. Evans, F. E. Chalk, and *189 J. W. Holt were called by plaintiffs to assist and corroborate Mr. Martin, and Messrs. L. Z. Crawford, W. H. Mead, and G. H. Moore were called by defendants to corroborate Messrs. Jenkins and Barnes. Mr. Williamson Jones, employed by the government for that purpose, had, in 1837, surveyed township 21 N., range 16 W. (including the line separating that township from township 20 N., range 16 W., in which the land here in dispute is situated), but none of the monuments, or corners, established hy him on that line, to the eastward of “Jeems Bayou,” appear to have been known to the parties t<5 this controversy, or their representatives. Mr. A. W. Warren, similarly employed, had, in 1839, established the interior lines of township 20 (at least, to the eastward of “Jeems Bayou”), including the eastern boundary, or range, line, between ranges 16 and 15 W. Mr. Parsons, a government surveyor, had done some work, in 1871, in the northeastern corner of the township here in question, and Mr. Bristol had made a survey, in the same year, of what is called “Wilson’s Point,” lying on the west side of “Jeems Bayou” in section 4. (Mem. The subjoined “sketch,” being a rough, reduced reproduction, in outline, of a map, prepared by W. E. Martin and filed in evidence in the case, will, perhaps, aid in rendering intelligible the foregoing and that which may follow.)
At the inception of the controversy, the only known comers in township 20 appear to have been the “quarter” comers A, at the extreme southeast corner of the sketch (S. E. cor. of N. E. % of section 13), and K, between sections 10 and 11. In beginning his. work for plaintiff, Martin started from A, and, guided by Warren’s courses and distances, endeavored to locate other corners established by him, and he says in his testimony :
“I accept A, B, C, M, J, K, and probably L, as located by Warren and probably ff as located by Parsons.”
And, with those corners accepted, as established, he located the'line, O, 27, M, I, 22.2 feet east of the well. Jenkins rejected most of the corners, accepted or established by Martin, and located the line in question 35 feet west of the well. Barnes also rejected Martin’s corners (with the exception of A and K about which there has been no-dispute), and located the line 15.7 feet west of the well. After the trial had been in progress for a number of days, Evans discovered the corner B1 and the N. E. comer of section 36, township 21 N., range 16 W., and they were recognized by all parties to be established government corners; which rendered it necessary for Barnes and Jenkins to abandon the theories upon which they had worked and make a new survey, and required a new map from Martin, who, in the light of the additional information thus obtained, pursued the same methods and reached the same conclusion as before. Barnes’ statement concerning the course pursued by Jenkins and himself is, in part, to the following effect, to wit: That, upon the discovery of Bl, he found that he could not by using the same variation, connect the three known and acknowledged government corners A, Blr and K (being O, D, and A, on his map), and hence that he rejected those corners and left them entirely out of consideration, placing them on his map only to show his reason for going further and that there was error in the work previously done.
They — that is, Barnes and Jenkins — then went over to the Bristol survey, in section 9, and started from certain “hacked” trees which they found there, and accepted as indicating the line between sections 9 and 10, though they are not mentioned in Bristol’s-field notes, and Mr. Barnes speaks of no-“bearing,” or “witness” trees that are called for by those notes.
Having thus, as they consider, established, the direction of the west line of section 10,. *191 they applied it at the point K, and thereby, as they consider established the east line of both sections 10 and 3,11.9 feet west of Martin’s point J. We abstain, for reasons that will be stated, from entering at this time into any analysis or comparison of the conflicting theories and testimony to which we have thus briefly referred, nor do we wish it to be understood that we have reached a conclusion concerning them. The learned judge a quo gave judgment for defendant, and plaintiffs are prosecuting the appeal.
In this court, defendants have filed pleas of estoppel, based upon the alleged acquiescence of John A. Russell in the erection and maintenance by Wadkins of a certain fence, which, it is argued by defendants, was intended by the parties named to mark the boundary between their respective holdings, and based, also, upon the alleged silence and inaction of the plaintiffs whilst the defendant Producers’ Oil Company was drilling the well in question. There has also been filed in this court, by plaintiffs, a motion, with affidavits attached, alleging that, since the trial-in the district court the United States government has caused a resurvey to be made, by A. D. Kidder, United States supervisor of surveys, in person, of township 20 N., R. 16 W.; and suggesting that the case he remanded in order that the court may obtain the benefit of the information to be acquired therefrom; and defendant (the Atlanta & Shreveport Oil & Gas Company) has filed objections to the consideration of the motion.
Opinion.
[1] This proceeding bears the usually accepted earmarks of a petitory action, but it also possesses one feature which is not usually found in such actions, viz., the defendants do not seriously dispute (and one defendant admits) plaintiffs’ title to the land described in their petition. It is for that reason, no doubt, that the trial judge was disposed to consider the action rather one of boundary. We are of opinion, however, that plaintiffs, having deliberately asserted their claim in the form of a petitory action, thereby assumed the burden of proof, which is about all that is involved in the determination of the question of the character of the action.
[2] The pleas of estoppel, as predicated upon the alleged acquiescence of John A. Russell in the erection and maintenance, by his neighbor, Wadkins, of the fence referred to in the foregoing statement, we do not find to be well founded, either in fact or in law. Russell, the ancestor of the plaintiffs settled upon the N. E. % of the S. W. % of the section 3 in question, in 1892, with a view of making it his homestead, and we infer that he made his settlement before Wadkins settled upon the adjoining tract. Russell’s house was situated to the southeastward of the place where the well now is, and was perhaps 150 feet distant from that point. Out in front of his house, he fenced a field of about six acres, a good part of which was beyond the line which separated his land from that of Wadkins. In the spring of 1897, probably, Russell, on account of the health of one of his sons, moved, with his family to Vivian where he could secure medical attention leaving his place in charge of one Florence (or Flores), a renter, and, after his departure, Wadkins caused the fence to be moved back, thereby taking to himself three acres of the field which Russell had been cultivating. He says in his testimony, that, when he and the surveyor whom he took with him arrived, Russell, who had received no notice of their coming, or purpose, came out of his house, saw what they were about, accepted the result amiably, and that they (Wadkins and Russell) were always on good terms afterwards. In fact, his statement is that there were no court proceedings, but that he and Russell had the line run, and thought it was “the actual line” between *193 them; that is to say, he was under that impression, and he thought Bussell was, from the way he acted, as he (Wadkins) had cut off about three acres of improved land, belonging to him that Bussell was cultivating. Bus-sell’s son, who was 11 years old at that time, testifying some 15 years later, says that his father was in Vivian when the fence was moved, and that he knew nothing about it until, in the fall of 1897 (as well as he could fix the date), he and his father went back to visit the place, and his father was informed by Florence that Wadkins had had the fence moved, and that he thereafter heard his father and Wadkins engaged in a dispute about it. Angel, Bussell’s son-in-law, also testifies that he heard Bussell and Wadkins disputing about the removal of the fence; and lies, a neighbor, says that they always disagreed about the fence. When we find, then, that it is a question, in this ease, whether the well is on one side or the other of the line, that the house is shown to have been perhaps 150 feet nearer the line than the well, and that the fence was, after all not a line fence, but merely a fence inclosing a field in front of the house, we are of opinion that no such acquiescence is established as would sustain the plea of estoppel, even against John A. Bussell, if he were before the court, since, taking the whole story as told by Wadkins, Bussell acquiesced, if at all, in the belief that the fence was on the line, and, that not having been the case, he could not be estopped to demand that the error be corrected.
“Owners are not bound by a consent regarding boundaries, fixed by themselves in error, without having left the matter to experts.” Gaude v. Williams, 47 La. Ann. 1329, 17 South. 844; Gray v. Couvillon, 12 La. Ann. 730; Bourguignon v. Boudousquie, 6 Mart. (N. S.) 701; Williams v. Bernstein, 51 La. Ann. 115, 25 South. 411.
Beyond that, John A. Bussell is not before the court, he never acquired title to the property in question, and it did not reach his heirs through his succession. They acquired their title, after his death, directly, by patent to them, from the United States, and nothing that he may, or might, have done, could affect the title so acquired. Rev. Stat. U. S. § 2291; Guaranty Bank v. Bladow, 176 U. S. 448, 20 Sup. Ct. 425, 44 L. Ed. 540; Shiver v. U. S., 159 U. S. 491, 16 Sup. Ct. 54, 40 L. Ed. 231; Buchser v. Buchser, 231 U. S. 157, 34 Sup. Ct. 46, 58 L. Ed. 166; McCune v. Essig, 199 U. S. 382, 26 Sup. Ct. 78, 50 L. Ed. 237; Demars v. Hickey, 13 Wyo. 371, 80 Pac. 521, 81 Pac. 705; Wadkins v. Producers’ Oil Co., 130 La. 311, 57 South. 937; Gjerstadengen v. Van Duzen, 7 N. D. 612, 76 N. W. 233, 66 Am. St. Rep. 679; Towner v. Rodegeb, 33 Wash. 153, 74 Pac. 50, 99 Am. St. Rep. 936.
[3] The other ground relied on, as supporting the pleas of estoppel, is no more adequate to the occasion than the ground thus considered. It is abundantly shown that plaintiffs did not know, any more than did defendants, the location of their line. It is said in the brief filed by defendants’ counsel:
“This well was located originally by the surveyor Moore, who had done considerable surveying in that country and believed he knew where the corners were. The plaintiffs knew of this location, and knew that the engineers claimed to have located it 150 feet on Wadkins’ side.”
And it is seriously argued that because plaintiff accepted, for the time, the assurance of defendants’ engineers, and allowed defendants to go on with the drilling of their well, they became forever estopped to inquire into the matter, and, by necessary inference, lost all of their land lying 150 feet to the westward of the well. There is no law to that effect, however, and no principle of equity. To the contrary, it devolves upon those who go upon land, for any purpose, whether to drill wells or otherwise, to correctly inform themselves, in advance, that they have that right.
The pleas of estoppel are therefore overruled.
*195 We abstain from a discussion of the main question in the case, not because of any failure to consider it, but because we are impressed with the conviction that the interests of justice will be best subserved by letting in the further light suggested by the motion to remand. The question to be determined is whether a well has been drilled upon the one side or the other of a line which should divide two quarter sections of land, in a section and township which have been surveyed and subdivided by the authority of the government of the United States. One might think it a very simple question, but it is not so. No one on earth can furnish the information necessary for its decision, save the gentlemen of the civil engineering and surveying profession, and those of them who have testified in that behalf, in this case, have arrayed themselves upon opposing sides, with a result which is thus referred to in one of the briefs filed on behalf of defendants, to wit:
“If this method had been pursued (meaning if plaintiffs had brought an action of boundary), we Should have been spared the protracted trial of 13 days, in the lower court, and this court would have been spared the labor of wading through 883 pages of closely typewritten examination and cross-examination, and reiterated re-examination and recross-examination, and reiterated re-re-examination and re-recross-examination, until the record is such a bulky mass and in such a confused condition that it must be read again and again before a fair conception can be formed of what is the substance of the testimony of any witness.”
[4] The suggestion contained in the motion to remand is that the United States government (for some reason entirely disconnected .with this ease, as we understand) has thought proper, since the trial in the district court, to order a resurvey of the township in which the land here in dispute is situated, and, in order that the work should be thoroughly and scientifically done, required that the head of its surveying department should give it his personal attention. It is also suggested that that officer, after devoting several months to the work, no doubt, with competent assistants, has completed the resurvey, and that it practically confirms the conclusion reached by W. E. Martin as to the true location of the line which is here in dispute.
It may be that the resurvey will not, of itself, be admissible in evidence, but the surveyor who made it will be a competent and disinterested witness, and we imagine that a way may be found whereby his testimony, as to the theory adopted, the method pursued, and the results achieved by him, may be obtained, and we are of opinion that such a way should be found, if possible.
The law and jurisprudence, we think, abundantly authorize, and establish precedents for, the remanding of a case presenting the condition's here disclosed. C. P. art. 906; Culliver v. Garric, 13 La. 137; Riley v. City of Louisville, 5 Rob. 184; Miller v. Allison, 2 La. Ann. 308; Smith v. Nash, 5 La. Ann. 575; Schneider v. Ætna Life Ins. Co., 30 La. Ann. 1198; State ex rel. Nelson v. Police Jury, 32 La. Ann. 884; State ex rel. Ranger v. City of New Orleans, 34 La. Ann. 202; Succession of Easum, 49 La. Ann. 1345, 22 South. 364; Albinest v. Railroad Co., 107 La. 133, 31 South. 675.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided and annulled, and that the case be remanded to the district court for the introduction of such additional and competent evidence as the litigants may see fit to offer touching .the question of the proper location of the line which should mark the boundary between the N. E. % of the S. W. % ami the S. E. % of section 3, township 20 N., range 16 W., in the parish of Caddo. It is further ordered that the costs, including those of the present appeal, await the final decision of the case.
On Motion to Amend Decree.
PER CURIAM. The decree, as heretofore handed down, is now so amended as that the *197 trial court is directed to receive, in addition to the evidence mentioned in said decree, such competent evidence as the litigants may see fit to introduce upon the question whether, in the event that judgment is rendered in favor of plaintiffs, the defendant Producers’ Oil Company should be held liable upon the basis of the whole amount of oil produced from the well here in controversy, or upon the basis of the royalty as agreed on between said company and plaintiffs, in the contract of lease set up by said company.