(95 South. 396)

No. 25125.

## WILKIN–HALE STATE BANK v. TUCKER et al.

### In re TUCKER et al.

(April 17, 1922.   On Rehearing, Jan. 27, 1923.)

*(Syllabus by Editorial Staff.)*

1. **Partnership** ⬤➡146(1) — **Indorsee of notes cannot recover without showing partner's authority to indorse for his own account.**

    One to whom a member of a partnership to which notes were payable indorsed them for his own account is not entitled to recover thereon without proof that the indorsing partner was authorized to indorse them for the firm.

2. **Appeal and error** ⬤➡1177(7)—**Case remanded for further evidence as to partner's authority to indorse notes instead of rendering judgment of nonsuit.**

    In an action on notes payable to a partnership and indorsed to plaintiff by one of the partners for his own account, as the only judgment that could be rendered against plaintiff for failure of the evidence to show such partner's authority would be one of nonsuit, the case will be remanded for further evidence on the question of authority under Code Prac. art. 906.

Certiorari to Court of Appeal, Parish of Orleans.

Action by the Wilkin-Hale State Bank against A. S. Tucker and others. A judgment for plaintiff was affirmed by the Court of Appeal, and defendants apply for certiorari or writ of review. Case remanded on rehearing for further evidence.

Miller, Miller & Fletchinger, of New Orleans, for appellants.

Merrick & Schwarz and Morris B. Redmann, all of New Orleans, for respondent.

By Division B, composed of Justices O'NIELL, LAND, and BAKER.

LAND, J.   The Wilkin-Hale State Bank instituted suit against A. S. Tucker and Joseph St. Mary in the civil district court of the parish of Orleans as the makers of three promissory notes, each for the sum of $500, alleging that said bank was the holder of said notes in good faith and for value before maturity, and that the makers of said notes had failed to pay same in whole or in part after amicable demand.

The defendants admit that the three notes of $500 each were originally executed by them and delivered to Pruiett, Day & Sniggs, a law firm of Oklahoma City, Okl., as part of a fee for the defense of the brother of the defendant Joseph St. Mary, who had been charged with an infraction of the criminal laws of that state.

The defendant Joseph St. Mary pleads in his answer that said notes had been paid in their entirety long before the maturity of any of them, and that this negotiation was manifestly a fraud upon and against the rights of the respondent, and specially denies that plaintiff is a holder in due course of said notes.

The defendant A. S. Tucker admits the execution of the notes sued on; that, acting for Joseph St. Mary, he engaged the services of the law firm of Pruiett, Day & Sniggs; and, for further answer, adopts the defense set up by his codefendant, Joseph St. Mary.

The case was tried by jury, and a verdict for $1,500 on the three notes, with interest and attorney's fees, was returned against defendants.

On the trial of the case before the jury, the plaintiff offered in evidence the notes sued on, to which offer objection was made on the ground that the notes were not admissible, unless and until the indorsement of the payee, Pruiett, Day & Sniggs, be first proved. The objection being overruled, the plaintiff then offered in evidence the depositions of two of its officers, taken in Oklahoma City, and then rested, and there was no further evidence offered by the plaintiff, except proof of an Oklahoma statute governing the conventional rate of interest. The testimony of the plaintiff bank's officers, taken under commission, declared that the plaintiff bank had acquired the notes sued on from Momon Pruiett, a member of the law firm of Pruiett, Day & Sniggs, the payee named in the two notes; that Pruiett had negotiated a loan of $3,600 from the bank on March 2, 1917, and on the same day the entire proceeds of the loan, less a discount of $90, were deposited in the plaintiff bank at the direction of Pruiett to the credit of the Rush Creek Oil & Gas Company, and that Pruiett secured the loan by executing his personal note indorsed by Kellie M. Roach, Jean Day, and Mrs. Pruiett, together with the three notes sued on. The vice president of plaintiff bank states in his deposition:

"The firm of Pruiett, Day & Sniggs got no money on credit. The credit was made to the Rush Creek Oil & Gas Company, by the direction of Momon Pruiett, of that firm. Credit was given by me as vice president of the bank, who handled the transaction for the bank, and the firm of Pruiett, Day & Sniggs had no interest in the Rush Creek Oil & Gas Company to my knowledge."

The bank's witnesses further testified that they knew the law firm of Pruiett, Day & Sniggs and the individual members thereof for ten years; that it was their belief "that they had never been solvent"; that the plaintiff bank had never done any business with the law firm of Pruiett, Day & Sniggs, and did not want their business, and would not take it if they offered it.

Defendants offered their testimony as to the payment of the notes sued on in this case.

A motion for a new trial was made and overruled, and the case appealed to the Court of Appeal for the Parish of Orleans, which affirmed the judgment of the lower court.

The testimony shows that Momon Pruiett, a member of the law firm of Pruiett, Day & Sniggs, an ordinary partnership, used these notes, partnership assets, as collateral for an individual loan, and that these facts were at the time well known to the vice president of the plaintiff bank.

Article 2872 of the Civil Code provides:

"Ordinary partners are not bound in solido for the debts of the partnership, and no one of them can bind his partners, unless they have given him power so to do, either specially or by the articles of partnership."

We find in the record of this case no special authority given to Momon Pruiett by the other members of his firm to indorse and to use these notes as security for his private purposes, and, without such proof, it is clear that the title of the law firm, an ordinary partnership, to said notes was not divested by the unauthorized and illegal indorsement of the firm name, and that plaintiff bank did not thereby become the holder of said notes.

In the case of Carter Bros. & Co. v. Galloway & Burns, 36 La. Ann. 733, we said on rehearing:

"There is no better settled principle of commercial law than, that a partner cannot use partnership property for his individual purposes, without the consent or authority of his copartner or partners and that when he attempts to do so, parties dealing with him are, by the very fact or nature of the transaction, warned and put on their guard, and that if the same is consummated, the burden of proving the knowledge, consent or authority of the members rests upon such parties, who, when sought to be made responsible, must, at their risk and peril, succeed or fail according as they may or may not prove such ratification."

In this decision we quoted approvingly the following excerpt from Story on Partnership:

"That in such cases the party dealing with the partner, and knowing the circumstances, will be deemed to act mala fide and in fraud of the partnership, and the transaction by which the funds, securities or other effects of the partnership have been so obtained will be treated as a nullity * * * for it is a clear misapplication of the partnership credit."

The vice president of plaintiff bank admits in his depositions in this case that he personally attended to the transaction in which Momon Pruiett used these firm notes as collateral for money borrowed from said bank, that said firm received no money or credit, but that the credit was made to an oil and gas company in which said firm had nö interest; and, to quote the exact language of the vice president of plaintiff bank: "We did not want their business, and would not take it, if they offered it."

In the face of the facts of this case and of the decision above cited, the plaintiff bank, knowing the circumstances, is deemed to have acted in bad faith in its dealings with Momon Pruiett, a partner of said law firm, and the transaction by which these notes were obtained is a nullity, as it was a clear misapplication of the partnership credit; and we find in the record no evidence offered to prove ratification of this transaction by the other members of said law firm.

As plaintiff was not the lawful owner of these notes, it was without interest or legal right to obtain judgment against defendants.

It is therefore ordered, adjudged, and decreed that the judgment of the district court and the judgment of the Court of Appeal be annulled, avoided, and reversed, and that plaintiff's demand be rejected, and that this suit be dismissed, at the plaintiff's cost.

## On Rehearing.

O'NIELL, J.  This is a suit on three promissory notes, signed by the defendants, and made payable to the order of Pruiett, Day & Sniggs, a law firm in Oklahoma. The notes were acquired by plaintiff, before their maturity, from Moman Pruiett, the senior member of the firm, who pledged the notes as collateral security for a loan made by the bank to him individually. Pruiett, at the time of the transaction, indorsed the notes thus:

"Pay to the order of Wilkin-Hale State Bank. [Signed] Pruiett, Day & Sniggs, By Moman Pruiett."

The defendants say that they paid the amount of the notes to the payee, Pruiett, Day & Sniggs, before the notes were due, and that the indorsement and transfer of the notes by Pruiett to the bank was not authorized by his firm, was fraudulent, and did not convey title. On those issues the case was tried by a jury, and a verdict and judgment were rendered in favor of the plaintiff. On appeal to the Court of Appeal for the Parish of Orleans, the judgment was affirmed. On review by the Supreme Court, the judgment of the Court of Appeal was set aside, and the case was remanded to that court for further proceedings not inconsistent with this court's opinion. The reason for remanding the case was that the Court of Appeal had based its decision upon the testimony of three nonresidents, whose depositions had been taken under commission, and were in the record, but had not been introduced in evidence. See Wilkin-Hale State Bank v. Tucker et al., 148 La. 980, 88 South. 239. The depositions referred to were those of the three members of the firm Pruiett, Day & Sniggs, testifying on the question of Pruiett's authority to indorse and negotiate the notes in the firm's name. When the case was resubmitted to the Court of Appeal, that court rendered a decree remanding the case to the civil district court, to receive evidence on the question of Pruiett's authority to indorse and negotiate the notes in the firm's name. A rehearing was granted by the Court of Appeal, and a judgment was then

rendered affirming the judgment of the civil district court, without regard for the depositions of Pruiett, Day or Sniggs, which had not been offered in evidence. The case was then brought here for review at the instance of the defendants.

In our original opinion in the present proceeding we found that the circumstances under which the bank had acquired the notes, with knowledge on the part of the bank officials that the loan was for the personal benefit of Pruiett, did away with whatever presumption the law might have established of Pruiett's authority to indorse and negotiate the notes. We had in mind, particularly, the fact that Pruiett had not pretended to be the owner of the notes, and had not indorsed them individually, when he negotiated them for his individual benefit, to the knowledge of the bank's officials. ·

[1, 2] Having reconsidered the matter, we have concluded to withdraw our original opinion in the present proceeding, and dispose of the case as the Court of Appeal first thought it ought to be disposed of; that is, by remanding it to the civil district court for further evidence on the question of Pruiett's authority to indorse and negotiate the notes in the name of his firm. Our opinion is that the plaintiff is not entitled to a judgment for the amount of the notes, without proof that Pruiett, who negotiated the notes for his own account, was authorized to indorse them for the payee firm. On the other hand, without affirmative evidence that Pruiett did not have such authority, the only judgment that we might now render against the plaintiff would be a judgment of nonsuit. Article 906 of the Code of Practice provides that, under these circumstances, where, because of a failure of one of the parties to produce the necessary evidence, the appellate court cannot render a definitive judgment, the case may be remanded to the trial court with appropriate instructions regarding the evidence omitted. That disposition of the case is preferable to a judgment of nonsuit, in that it will perhaps avoid another suit on the notes.

The judgment of the civil district court and the judgment affirming it by the Court of Appeal are now annulled, and it is ordered that this case be remanded to the civil district court to receive evidence on the question whether Momon Pruiett had authority to indorse and negotiate the notes in his firm's name, and for a new trial on that issue. The plaintiff bank is to pay the costs of this court in the present proceeding; the question as to who shall pay other costs depends upon the final judgment.