### No. 3616

### Second Circuit

### MANGET BROS. v. HENRY

(March 24, 1930. Opinion and Decree.)

Rusca & Cunningham, of Natchitoches, attorneys for plaintiff, appellant.

Breazeale & Hughes, of Natchitoches, attorneys for defendant, appellee.

ODOM, J. Plaintiff's Chevrolet automobile, driven by its employee, Blunt, collided with defendant's Ford truck, loaded with lumber and driven by a colored chauffeur on a public highway. The automobile was wrecked, and plaintiff brought this suit to recover the damage.

Plaintiff alleges that the collision was due solely to the fault and negligence of defendant's chauffeur in driving on the wrong side of the road. Defendant, in answer, denied that his chauffeur was on the wrong side of the road and alleged that he was guilty of no negligence at all, but, on the contrary, alleged that the accident was due solely to the negligence of the driver of plaintiff's car in driving on the wrong side of the road.

The collision took place in the daytime while plaintiff's driver was going towards Natchitoches and the defendant's truck was being driven in the opposite direction, towards Robeline. The automobile and the truck met on a curved portion of the road which is improved with gravel eighteen feet wide, with a shoulder three feet wide on either side of the gravel. The collision took place on the left-hand side of the road, going to Natchitoches, or on plaintiff's wrong side of the road, and therefore on the truck's right side of the road. But Mr. Blunt, who was driving plaintiff's car, testified that he was driving on his right-hand side of the road when he saw defendant's truck meeting him on the same side, or on the truck's wrong side of the road. He says that when he first saw the truck approaching on the wrong side of the road, he assumed for the moment that the driver of the truck would turn to the right, or to his right side of the road; but that as the two vehicles came near together, he realized that the truck driver would not turn to his right side of the road and, realizing that if the two vehicles proceeded straight ahead there would be a head-on collision, he suddenly turned his car to the left in order to go around the truck on his left side of the road. He says further that about the time he turned his car to the left, the colored chauffeur turned to the right with his truck, and the two cars collided.

The colored chauffeur was called as a witness, and testified that he was not at

any time on his wrong side of the road, but, on the contrary, was driving on his right side, and that for some reason, unknown to him, the driver of plaintiff's car turned over to that side of the road. The testimony of the two drivers is therefore contradictory. The other testimony, however, leaves us in no doubt that defendant's chauffeur was driving on the wrong side of the road. When the two vehicles came to rest after the collision, plaintiff's car was found with its rear wheels over in the ditch and the front wheels upon the dump on the left-hand side of the road, going to Natchitoches. Defendant's truck, which was loaded with lumber, was found at a slight angle across the road, with the left front wheel a little to the right of the center of the road and the rear left wheel about twelve inches to the left of the center. Several parties, including defendant himself, who visited the scene shortly after the collision, found skid marks on the road immediately back of the truck, showing that the driver, a moment before the collision, had applied his brakes in order to stop, and these skid marks, as stated, extended about fifteen feet back of the truck. The position of the truck when it came to rest and the direction of the skid marks show that the truck at the time of the collision was being turned over to its right-hand side of the road. This corroborates Mr. Blunt's testimony that the truck, when he first saw it, was on its wrong side. The colored chauffeur testified that he was driving on his right side, and that as soon as he saw plaintiff's car coming, he turned further over to the right. His testimony that he was driving on the right side of the road cannot be true, because the truck, when it came to rest, was not on the right-hand

side of the road, but slightly to the right of the center of it.

If the truck driver were driving on the right side of the road, as he says he was, there would have been no necessity, of course, of his turning to the right on meeting another car. The driver of plaintiff's car, Mr. Blunt, testified that as the two vehicles came near together, it appeared to him that the driver of the truck took notice, or "waked up," and turned to the right. There are portions of the colored chauffeur's testimony which lead to the conclusion that Mr. Blunt was probably correct in his surmise that the colored chauffeur was paying no attention. The colored boy was asked several times during his examination how far the two vehicles were apart when he first saw the Chevrolet approaching, and several times he stated that they were almost together.

Another significant fact is that Mr. Henry, the defendant, after talking with a colored boy who was riding on the seat with the chauffeur, was convinced that his driver was wholly at fault. Immediately after the collision, Mr. Blunt was carried to a physician's office in Natchitoches where he was attended. While in the physician's office, Mr. Henry told him in the presence of others that the accident was due to the fault of his driver who was driving on the wrong side of the road, and stated that he had insurance to cover whatever damage Mr. Blunt had sustained on account of his personal injuries, but that his insurance did not cover the loss on the car. Mr. Henry had received his information as to how the collision occurred from the colored boy who was riding with his chauffeur. At the interview in the physician's office, Mr. Henry, it seems, entertained no doubt that he was liable for whatever damage that had been done. But, after going to

the scene of the collision and finding his truck in the position described above, he reached the conclusion that probably his driver was not on the wrong side of the road, and he later denied liability for that reason. At the time he had the conversation with Mr. Blunt in the physician's office, Mr. Henry had not talked with his chauffeur. The colored boy, who had informed Mr. Henry as to how the accident happened, was not called as a witness for either side.

The testimony convinces us that defendant's chauffeur was driving on the wrong side of the road and that his doing so was the cause of the collision.

The circumstances in this case are almost identical with those described in the case of Goodson vs. Schuster's Wholesale Co., Inc., 10 La. App. 486, 120 So. 689, 692, where we held, in accordance with decisions of our Supreme Court and in line with the jurisprudence of other states, that "one compelled to turn to the left and wrong side of a road to avoid a collision, because of another person's violation of the law of the road, is not negligent." Potter vs. Glassell, 146 La. 687, 83 So. 898; Schick vs. Jenevein, 145 La. 333, 82 So. 360; 13 R. C. L. 286-288; Bragdon vs. Kellogg, 118 Me. 42, 105 A. 433, 6 A. L. R. 669.

The testimony amply supports the conclusion that plaintiff's driver turned to the left in order to avoid a head-on collision with defendant's truck. His doing so was not negligence.

Learned counsel for defendant have cited in brief Elliott on Roads and Streets (3d Ed.) secs. 1079, 1080, 1081, and 1082, pp. 618, 619, 620, and 621, in support of the proposition that, as a general rule, "one may travel upon any part of a highway not occupied at the time by another, but if he meets another traveler whom he desires to pass, or who desires to pass him in

either direction, there are certain rights and duties which each must observe in order to avoid a collision."

It is not negligence per se for one to drive in the center or on the wrong side of the road, but it is negligence for one on the wrong side of the road to fail to turn to the right on meeting another vehicle. Further quoting from the authority cited by counsel:

"The first and most important rule is, that in meeting, each party shall bear or keep to the right. If there is no statute on the subject, proof of this custom is not necessary for the court will take judicial knowledge of it.

"One who violates the law of the road by driving on the wrong side of the way assumes the risk of all such experiments, and must use greater care than if he had kept on the right side of the road. If a collision takes place, the presumption is generally against the party on the wrong side."

The eminent authority cited by counsel does not help his case. The rule laid down by Mr. Elliott is the same as that which is laid down by all the text-writers and by the courts, and that is that whereas it is not negligence per se to drive on the wrong side of the road, yet it is the duty of one who thus violates the law of the road to turn to the right on meeting another vehicle and that his failure to do so is negligence; and that it is not negligence for another to turn to the left or wrong side of the road in order to avoid a collision.

We think defendant is clearly liable in this case. The district judge rejected plaintiff's demands; but, as we understand from counsel, he did so because plaintiff failed to prove the quantum of damage. We gather from the record that this is true because the minutes of the court of April 16, 1929, read as follows:

"Case heretofore tried and taken under advisement by the court, judgment now rendered in favor of the plaintiff, leaving the question of value of the car wrecked open, value to be determined after further evidence."

Counsel for plaintiff made a strenuous effort to have the case reopened for the purpose of showing the damage sustained, which he had failed to prove accurately; but the court refused to permit him to introduce further testimony and finally rendered judgment against the plaintiff, rejecting his demands.

The testimony found in the record as to the damage sustained to plaintiff's car is not such as to warrant the court in fixing any specific amount. The testimony shows that the car was almost completely wrecked, but it does not show the value of the car. It was practically a new car which cost $732.50 when new; but there is no testimony to show when it was purchased nor the extent to which it had been used. There is testimony to show that plaintiff was offered $50 for the wrecked car.

We think the court should have reopened the case in order to permit further testimony as to the damage done, or should have dismissed plaintiff's suit as in case of nonsuit. We think, in the interest of justice, the judgment appealed from should be set aside and the case remanded for the restricted purpose of permitting testimony to establish the quantum of damage. Such has been the practice of the Supreme Court and of this court, and is authorized by article 906 of the Code of Practice. See Favrot vs. Chappuis, 147 La. 1054, 86 So. 492; In re Tucker, 153 La. 47, 95 So. 396; Brasher vs. Grant, 1 La. App. 457; Traylor vs. Murphy, 2 La. App. 593; (Gunn, 3d Opponent) Bordages & Tierney vs. Mrs. Marie J. Staggers, 3 La. App. 343.

For the reasons assigned, the judgment appealed from is set aside; and it is ordered that the case be remanded to the district court for the purposes herein stated; costs of appeal to be paid by appellee, all other costs to await final results.