ELLIS, Judge.
Plaintiff is seeking to recover alleged damages to his 1941 Studebaker sedan as the result of a collision with a 1941 Ford Coupe owned by Lucy Auzenne which occurred after dark on January 25, 1954 on blacktopped Louisiana Flighway, No. 219. It was shown on the trial below that on the date above set forth the plaintiff was driving his Studebaker sedan in an easterly direction on the blacktopped highway when he noticed approaching him or stopped, a motor vehicle with only its right light burning. The plaintiff approached this apparently one lighted motor vehicle at 30 miles per hour but pulled as far to his right as possible without running off on the black top, then, when it was too late to avoid the accident plaintiff observed that there was a car with a portion of its front end across the center line in his lane of travel and what he had been taking as a motor vehicle approaching or stopped with only one light was, in reality,.a pickup truck parked to the rear of the stationary motor vehicle so that the left light of the pickup was hidden by the parked motor vehicle.
*618 It was plaintiff’s contention in the Lower Court as well as in this Court that the case came under the exception to the general rule that one must operate his vehicle at night at such a speed that he is able to bring it to a halt within the distance illuminated by his headlights. Plaintiff relies upon Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377; Taylor v. Fidelity & Casualty Co. of New York, La.App., 55 So.2d 307; Achord v. Great American Indemnity Co., La.App., 68 So.2d 643; Woodley & Collins v. Schulsters’ Wholesale Produce Co., 170 La. 527, 128 So. 469; Louisiana Power & Light Co. v. Saia, 188 La. 358, 177 So. 238; Warnick v. Louisiana Highway Commission, La.App., 4 So.2d 607; Central Manufacturers Mutual Insurance Co. v. Linkenhoger, La.App., 41 So.2d 472.
Judgment was rendered in favor of defendant dismissing plaintiff’s suit and the latter has appealed to this court.
The facts are practically undisputed. It is shown that shortly prior to the collision, which occurred at approximately 6:45 p. m. on January 25, 1954, an automobile belonging to Lucy Auzenne, mother of Bertrand Auzenne, and which was insured by the defendant company, was being driven by Bertrand Auzenne from Frank’s Service Station to his home. In the car as a passenger was his aunt, Alzie Auzenne. The car gave out of gas and Auzenne secured gas from Bennie Pitre, approximately one mile from where the car stopped, and the latter brought Auzenne back in his Ford truck. After the gas had been put in and the car still failed to start, Auzenne thought that if it was pushed on level ground the gas would possibly reach the carburator and it would then start, and they therefore pushed Auzenne’s car in such a position that the front end was over the center line of the highway. The car was sitting at an angle with its front end in the plaintiff’s lane of travel. Pitre’s truck had been parked behind Auzenne’s car and after the latter had been pushed into the position stated, it still would not start and Pitre then intended to push the car with his truck. Before doing so, however, Auzenne stepped back to Pitre’s truck to pay him for the gas, whereupon the plaintiff, approaching from the opposite direction in the south or east bound traffic lane, collided with the left front portion of the parked car, knocking it to the rear so that the left front headlight on the Pitre truck and a portion of the left front of the truck was damaged. According to one witness, the two cars after the accident came to a stop with their left front portions still locked together.
According to the plaintiff’s version of the accident, as well as that of two relatives who were passengers in his car at the time, the first thing they noticed as they approached was a motor vehicle either coming toward them or parked with its right light burning. They never did see the left light or any sign of it, nor did they see the Auzenne automobile pushed crossways of the road with its front portion protruding in their lane of travel until they were evidently very close to it as shown by skid marks approximately 20 feet in length, which the police officer testified were made by plaintiff’s car. There seemed to be some doubt thrown upon the police officer’s testimony on this point as plaintiff and his two witnesses stated they did not see the parked car until they collided with it, however, some parts of the testimony reveal that the plaintiff did not understand English too well and it is possible that when he stated he did not see it until he hit it, he meant just prior to or approximately at the moment of impact. Whether he saw it too late to avoid the accident or did not see it at all is more or less immaterial to the question to be decided. We must decide whether there were any unusual facts or circumstances which would excuse the plaintiff from failing to see this parked automobile.
It is proven that plaintiff was driving at a most reasonable rate of speed of 30 miles per hour and was under no duty to bring his car to a complete stop merely because he saw approaching him or parked a motor vehicle with one light burning. He slowed *619 down and pulled his automobile as far to the right as possible so as to give plenty of room to the approaching motor vehicle with one light burning. This was the action of a normal, careful driver. It is contended that plaintiff should have seen the automobile partially blocking his lane of travel reflected in the headlights from Pitre’s truck. From the evidence, the parked automobile was situated so as to completely cut off the left headlight of the truck parked to its rear and made it appear to approaching traffic that there was a motor vehicle with simply a bright right light burning. In other words, according to the testimony of plaintiff and his two passengers, who were his uncle and aunt, all three of whom were sitting on the front seat, it appeared to them that they were approaching a motor vehicle with one light, which they took to be the right, burning. Not any one of them saw the automobile parked in front of the motor vehicle with the one light burning. The fact that the three occupants of plaintiff’s car, all with normal eye sight as far as the record is concerned and all of whom were on the front seat and enjoyed an unobstructed view ahead and none of whom saw the parked motor vehicle, is strong evidence that the latter was so parked that it cut off any reflection of the left headlight that would silhouette same. There is no question but that the parked automobile was protruding into the plaintiff’s lane of travel with no head light or parking light burning, nor that the plaintiff had slowed down and pulled as far to his right as possible. This is borne out by the fact that plaintiff’s car did not go any appreciable distance after the collision and by the fact that plaintiff struck the left front portion of the parked automobile, missing the right side.
The plaintiff has shown by the facts and circumstances of the case that the parked automobile was so located and situated with particular reference to the lights of the truck parked slightly to its rear that it could not be seen and it only gave the appearance to the plaintiff and the occupants of his car that they were approaching a motor vehicle with only one right light burning.
The negligence of Bertrand Auzenne is established by the fact that he pushed his automobile crossways of the highway with its front end protruding into the plaintiff’s lane of travel. Auzenne’s aunt, who was a passenger in his car and who jumped out of the parked automobile when she realized it was going to be hit by plaintiff’s approaching car just prior to the collision stated that the car was pushed crossways of the road with its front end across the-center line but she thought that it would! be moved prior to the approach of any traffic.
Plaintiff has borne the burden of proof necessary to establish the fact that he comes under the exception to the general rule and that he should recover.
On the question of quantum, plaintiff failed to offer testimony by which the lower court could definitely fix the amount of damages to his car. There is nothing in the record to show that he asked that the case be reopened prior to judgment or for a new trial in order that he might produce such testimony, and we surmise that that is why the district judge dismissed the suit. No written reasons were given.
An attempt was made to prove the damages to plaintiff’s car but the witness was unable to specifically designate by name the damaged parts. It was proven, however, that the car originally cost $125 and that plaintiff had purchased a second-hand motor for $250 which had been placed ins the automobile and had further spent $70,. evidently in repairs, prior to the collision. It was definitely established also that the front end of plaintiff’s car was “all beat up, the front, the whole front of it.” It is further stated that: “Generally it looked like the whole front end was gone to me.”
We thus have a case in which the plaintiff has established the negligence and! therefore the liability of the defendant for damages to his car as the result of the collision, and further the plaintiff has es *620 tablished that his car was actually damaged but has failed to prove specifically the value of the damaged parts, and on this appeal in the alternative in his brief asks that the case be remanded to establish the damages so that a definitive judgment may be rendered herein.
We believe that it would be proper in this case to exercise the right given us by Article 906 of the Code of Practice of remanding the case to the trial court so that the defendant might produce definite evidence of the quantum of damages to his automobile within the bounds of the allegations and prayer of his petition. We base our remand upon many cases decided by the appellate courts of this state. In the recent case of Dietz v. Dietz, 227 La. 801, 80 So.2d 414, 417, the Supreme Court exercised the prerogative given to appellate courts under Article 906, Code of Practice. In this case it stated:
“Since defendants have failed to come forward with proof to rebut the presumption that the sale to John Dietz was simulated, we would be justified in annulling that transaction. On the other hand, although the circumstances surrounding the sale to William Dietz cast suspicion on its genuineness, the evidence adduced is too scant to shift the burden of proof onto that defendant. Hence, a final adjudication of the cases on the record in its present state would require that we annul the deed to John Dietz and uphold the deed to William Dietz. But such a result might not be consonant with justice which no doubt could have been dispensed had the defendants elected to produce the evidence readily accessible to them. Under these circumstances, although defendants have not requested a remand of the cases in order to adduce further testimony, we think it appropriate to exercise the prerogative - given us by Article 906 of the Code of Practice of remanding the case to the trial court for the purpose of permitting the defendants to produce the notary and the witnesses to the acts so that their testimony may be heard, together with all other additional evidence which may be tendered by any of the parties litigant on the issues presented.”
Applying the language of the Supreme Court in the cited and quoted case, a final adjudication of the case at bar on the record in its present state would require that we affirm the judgment of the Lower Court by dismissing plaintiff’s suit but such a result might not be consonant with justice which no doubt could have been dispensed had the plaintiff produced specific proof of quantum.,
In the case of Willis v. Berry, 104 La. 114, 28 So. 888, it was held that the authority to remand a case for further evidence is manifest when a vital question pf fact may be made quite clear by further testimony.
Again in the case of City of New Orleans v. Ryman, La.App., 79 So.2d 573, 575, our brethren of the Orleans Court of Appeal in dealing with Article 906 stated:
“Article 906, Code of Practice, grants an appellate court the discretion to remand a case wherever such action is consonant with the ends of justice. This article very plainly authorizes a remand not only where the parties have failed to adduce the necessary evidence or where the inferior court has refused to receive it, but it also uses the words ‘or otherwise’ plainly indicating that a cause may be remanded for any other reason which the appellate court may deem sufficient. McClung v. Delta Shipbuilding Co., Inc., La.App., 33 So.2d 438. A case may be remanded not only on a new question of fact but on a new question of law as well. City of New Orleans v. Grosch, La.App., 49 So.2d 435.”
A case quite similar to the case at bar is Manget Bros. v. Henry, 13 La.App. 57, 127 So. 51, 54, decided by our brethren of the. Second Circuit. This case involved an automobile accident in which the court stated that it thought the defendant was *621 clearly liable. The district judge rejected the plaintiff’s demands because the latter had failed to prove the quantum of damage. It was found that the testimony in the record as to the damage sustained to the plaintiff’s car was not such as to warrant the court in fixing any specific amount, but in that case, as in this, the testimony did ■show that the car was almost completely wrecked but there was no testimony to •show when it was purchased nor the extent to which it had been used. It was shown in that case, which is not true in the case at bar, that the plaintiff made a strenuous ■effort to have the case reopened for the purpose of showing the damage sustained which he had failed to prove accurately, hut the court refused to permit him to introduce the further testimony. While it would possibly have been a much better practice for counsel for plaintiff to have done the same thing in the case at bar, the ■fact that he did not does not deprive or preclude this court from exercising its prerogative under Article 906 of the Code of Practice, In the cited case it was stated:
“We think the court should have reopened the case in order to permit further testimony as to the damage ■done, or should have dismissed plaintiff’s suit as in case of nonsuit. We think, in the interest of justice, the judgment appealed from should be set aside and the case remanded for the restricted purpose of permitting testimony to establish the quantum of damage. Such has been the practice of the Supreme Court and of this court, and is authorized by article 906 of the Code of Practice. See Favrot v. Chappuis, 147 La. 1054, 86 So. 492; In re Tucker, 153 La. 47, 95 So. 396; Brasher v. Grant, 1 La.App. 457; Traylor v. Murphy, 2 La.App. 593; (Gunn 3d Opponent) Bordages & Tierney v. Staggers, 3 La.App. 343.”
See also Russell v. Producers’ Oil Co., 138 La. 184, 70 So. 92; Hazel v. Williams, La.App., 80 So.2d 133.
For the above reasons, it is therefore ■ordered that the judgment of the District Court be set aside and the case remanded for the restricted purpose of permitting testimony to establish the quantum of damages, the cost of this appeal to be paid by plaintiff-appellant, all other costs to await the final determination of the case.
TATE, J., recused, M. D. MILLER, Jr., Judge ad hoc.