LOTTINGER, Judge.
This is a suit in tort for property and personal damages sustained in an automobile accident. Petitioners are Ramon J. Labat who sues individually for property damages and for and on behalf of his minor daughter, Ramona Ann Labat for physical injuries, and his wife, Mrs. Anna Mae Ledet Labat, who sues for personal injuries sustained in the accident. Also named as a petitioner is Hartford Accident and Indemnity Company, the collision insurer of the Labat automobile who sues under a sub-rogation claim for damages to the Labat vehicle. The defendants are Billy W. Coleman, the driver of the vehicle which collided with the Labat automobile, Betty Ann Plebert, the driver, and her father, Scuddy J. Hebert, the owner of a vehicle which was allegedly a cause of the accident and West-chester Fire Insurance Company, the liability insurance carrier on the Hebert vehicle. The Lower Court rendered judgment in favor of petitioners and against all defendants except Billy W. Coleman who did not file answer nor appear at trial on the merits, nor did petitioners take a default judgment against him. However, Billy W. Coleman was held negligent under the written reasons assigned by the Lower Court. From the said judgment the defendants, except Coleman, appealed seeking a reversal, and the petitioners appealed seeking an increase in quantum.
The record discloses that on the late afternoon of August 21, 1959, Mrs. Labat *89 was driving her family Pontiac automobile on Louisiana Highway No. 1 between Thibodaux and Raceland, Louisiana in a southerly direction towards Raceland. She was involved in a head-on collision with a Ford automobile traveling in her opposite direction and driven by defendant, Billy W. Coleman. The accident resulted in substantial damage to both automobiles, as well as injuries to Mrs. Labat and her infant daughter, Ramona. Riding as a passenger in the Coleman automobile was Claude Begnaud.
Ramon J. Labat filed a claim on behalf of the community, and for and on behalf of his infant daughter, Ramona Ann Labat. Mrs. Labat filed a suit for her own injuries, and Hartford Accident and Indemnity Company joined as a plaintiff for the recovery of the Labat automobile damages. It was stipulated that the claim of Hartford in the amount of $1,394.42 would be recognized under its subrogation claim and that the deductible amount of $50.00 would be recognized in Mr. Labat’s favor.
Betty Ann Hebert, a defendant, is the daughter of and lives with her father, Scuddy J. Hebert, also the defendant herein. In the brief of defendants, Miss Hebert is stated to be 22 years of age. It was alleged that she was on a mission for her father at the time of the accident, and that she had his permission to use the family Chevrolet automobile which she was driving. She, as a member of the Hebert household, would be an additional insured under the omnibus clause of the Hebert liability policy which covered the Chevrolet and which was issued by Westchester Fire Insurance Company. The limit of that policy was in the amount of $10,000.00 for injuries to any one person and $20,000.00 for any one accident. The property damage portion of the policy is more than sufficient to cover the damages for loss of the plaintiff vehicle. In addition to this policy, however, there was filed into this record another policy issued by Westchester Fire Insurance Company which has the identical coverage as the Chevrolet policy, but it specifically covers a 1956 Buick automobile which was also then owned by Mr. Hebert. In their suit, petitioners claim that both of these policies apply in full to the case at Bar, and that they should, therefore, be “Stacked” so as to provide coverage of $20,000.00 for injuries to any one person, and $40,000.00 for any one accident.
The evidence discloses that, at the scene of the accident, Louisiana State Highway No. 1, which is an asphalt highway running generally in a northerly and southerly direction with a width of 24 feet, there are shoulders on either side of the highway for a width of six to eight feet on each side. The site of the point of impact was at a distance of 125 feet north of the middle line of the Fifteen Oil Company Road which is a private driveway running in a westerly direction from Louisiana Highway No. 1. The impact was in Mrs. Labat’s lane of traffic, which was the western lane of traffic of Louisiana Highway No. 1. We feel, as did the Lower Court, that there is no serious doubt as to the point of impact because of the testimony of the patrolman who investigated the accident, as well as othei witnesses who testified. North of the point of impact Louisiana Highway No. 1 is straight for some distance. Going in a southerly direction from the point of impact, the highway is straight for a distance ■of approximately 500 feet then there is a gradual curve.
At the time of the accident, there were five automobiles in the immediate area. Billy Coleman was proceeding northerly in his Ford, Mrs. Janice Ordoyne was proceeding northerly in her white Chevrolet, and there is a possibility that a pick-up truck owned by Mr. Lynn Arceneaux was present. Also in the area were Mrs. Labat, proceeding southerly in her Pontiac automobile, and Betty Ann Hebert, who was driving her father’s Chevrolet. Just preceding the impact, Miss Hebert approached Louisiana Highway No. 1 from the Fifteen Oil Company Road, and made a left hand turn to proceed northerly, or towards *90 Thibodaux, on Highway 1. After she had proceeded to a point in the highway which is situated 125 feet north of the center line of the Fifteen Oil Company Road, the Coleman and Labat vehicles collided in the west, or southern bound lane of the highway. Although there is discrepancy in the testimony as to what caused the impact, we believe that the Lower Court correctly held that the accident was caused by the negligence of both Miss Hebert and Billy Coleman.
The testimony, as a whole, indicates that Billy Coleman was in the process of passing the Ordoyne automobile at a speed of some 70 miles per hour at about the time that the Hebert vehicle pulled into and turned left on Highway 1. Upon noticing the precarious position facing him, that is the Labat vehicle approaching him head-on, and the position of the Hebert vehicle which prevented his safe return to his right hand lane, Mr. Coleman, in attempting to regain his right lane, lost control of his vehicle and collided head-on with the Labat automobile.
The Lower Court held that Betty Hebert was negligent in turning' into the highway in the face of approaching traffic. Although she testified that she looked but did not see any car approaching, the Lower Court held that the cars were present and had she looked she would, or should have, seen.
Mr. Coleman and his passenger, Mr. Begnaud, as well as the petitioners, claim that the Hebert automobile emerged from the Fifteen Oil Company Road into a hazardous traffic condition, with the Ordoyne and Labat automobiles approaching each other, all in plain view and with Coleman attempting to go around Mrs. Ordoyne. Into this traffic situation, from a side road and from a safe position, Miss Hebert drove onto the highway at a slow rate of speed and turned left to go toward Thibodaux. The Lower Court, we believe correctly, held khat Mr. Coleman was negligent in proceedings along the highway at an excessive rate of speed.
The record discloses that both Ramona. Labat and her mother sustained personal injuries as a result of the accident. Ramona, who was the more seriously injured sustained a broken lower jaw, which was broken in three places, at the chin and at. each joint on either side. She also sustained a skull fracture and a broken neck.. At the time of the accident, young Ramona-. was 14^ months old.
Dr. James R. Peltier, an oral surgeon of Thibodaux, Louisiana, testified that the-fracture to the jaw of the child was of a more serious nature. He waited some seven-, days before performing an operation to make sure that the child had no injuries which could not be identified at the time and. to make sure that she would be a proper-risk for surgery. During this period of time, young Ramona was fed a regular diet mainly because the doctor did not want any healing to occur until such time as surgery would be performed to set the bones in-their proper position. During this period of time, the doctor testified that he could-see that the child was extremely uncomfortable, however, she was not given any sedation because it was felt that sedation-might mask any signs of head injury. The-only drug given Ramona for relief of her pain was aspirin. Dr. Peltier testified that this young child has had a miraculous recovery to say the least. On his last examination, a short time before trial, she had a wide range of motion and no malformation of her lower jaw. Although he was not able to testify whether or not Ramona would have a normal jaw, the doctqr testified that “it looks as though she will also have a normal growth”. Ramona lost no teeth as a result of the accident, although Dr. Peltier testified that she will possibly lose one baby tooth in the chin area which was in the line of fracture. However, he testified that her permanent teeth should be all right.
*91 Dr. Peltier testified that he has not yet discharged Ramona from his care, and that he would not discharge her for another fifteen years because he wished to examine "her twice a year to determine whether she ■will have any deformity in the lower jaw.
In addition to the injuries to her jaw, Dr. Morvant, a surgeon of Thibodaux, testified with regard to the neck injuries of Ramona. He stated that it was one month after the •accident before they noticed a fracture of the second cervical vertebrae, she responded well to treatment.
The only residual to the injuries of Ramona are the probability of a deformed jaw as testified to by Dr. Peltier, and a ■crossing of the right eye as was testified to "by Dr. George Whitman, an oculist of Thibodaux. As to the residual to the jaw, Dr. Peltier thought this was only a prob•ability, and his testimony was to the effect that she would have a normal recovery. As 'to the crossing of the eye, which evidently '■began shortly after the accident, Dr. Whitman testified that this was not caused by the accident, but that he thought the acci■dent was simply a precipitating cause. Be■cause of this defect in the eye, which he felt ■would have occurred in due course notwithstanding the accident, and because of the inability to conduct a satisfactory eye examination of a child of such tender years, it would be some time before corrective surgery could be performed. Due to this lapse of time during which the right eye would remain in a crossed condition, Dr. Whitman testified that there could be a weakening of the vision in the right eye because of lack of proper use thereof. Again this possible weakening of the eye was only a presumption and so we actually have no concrete evidence whatsover as to any permanent injuries which may have been sustained by young Ramona.
With regard to the injuries to Mrs. Labat, Dr. Morvant testified that she sustained a contusion of the right knee, and a rather severe contusion of the right arm above the elbow. She had a cut on the upper lip, and was in a highly excitable state because of the injuries to her baby, Ramona. Mrs. Labat was also concerned because she was two months pregnant at the time of the accident. She responded well to treatment, and the only residual is a puffing of the upper right lip, giving the impression of a fever blister.
The Lower Court awarded Mrs. Labat the sum of $2,000.00 for personal injuries, pain and suffering. We believe that this award was adequate, considering the injuries which she sustained and her recovery therefrom, and it will not be disturbed. With regard to the award to Mr. Labat for special damages, the Lower Court awarded the sum of $2,027.62. This sum included hospital and doctor bills and nursing bills for both Mrs. Labat and Ramona as well as loss of earnings for Mrs. Labat due to her inability to work for approximately twenty days.
The Lower Court concluded that inasmuch as the limits of liability for any one person was $10,000.00, that the differential of $7,972.38 should be awarded Mr. Labat for and on behalf of his minor child, Ramona, to cover her physical injuries, pain and suffering. In its written opinion the Lower Court indicated that were more money available it would have granted a higher award to Ramona.
We believe that the Lower Court erred in combining the special damages sustained on the accident of both Mrs. Labat and Ramona with the physical damages sustained by Ramona in limiting its award for physical damages to Ramona. In setting this limit of $10,000.00 suffered by one person in one accident, the Lower Court should have distinguished between the special damages - sustained by Mr. Labat on behalf of his daughter and the special damages sustained by Mr. Labat on behalf of his wife. These special damages, insofar as Ramona was concerned totaled $1,494.01, while the special damages sustained on behalf of Mrs. Labat was in the sum of $533.61. De *92 ducting the special damages sustained by Ramona from the liability limit of $10,000.00 would leave the sum of $8,505.99 which would be available to be awarded Ramona for physical injuries, pain and suffering, were such an amount justified.
In reaching its award of quantum to Mr. Labat for and on behalf of Ramona, the Lower Court cited Stockwell v. Gulf Engineering Co., Inc., La.App., 83 So.2d 386, wherein an award of $25,000.00 was given for pain and suffering to a five year old child who suffered fractures of both of her jaws as well as additional extensive injuries. There is no question in our minds but that the injuries sustained by the child in that case were of a much more serious nature than those sustained by Ramona in the case before us. However, considering that Ramona remained in a semi-comitose state for a period of three or four days, during which she could not be aroused by external stimuli and by movement, considering that it was necessary that she remain in the hospital a period of some two weeks, during the greater part of which great concern was expressed for her young life, and considering the probability of a weakening of one eye, and the probability of an ab-, normal growth of her jaw, we feel that her award should be increased to the sum of $8,500.00.
With regard to the question raised by petitioner as to the “stacking” of the two insurance policies held by Mr. Hebert, we do not believe that we need consider same because of the amount awarded for the pain and suffering of Ramona.
For the reasons hereinabove assigned, the judgment of the Lower Court will be amended so as to increase the amount of award to Mr. Labat for and on behalf of his minor child, Ramona, to the sum of $8,-500.00, and as amended, the judgment of the Lower Court will be affirmed. All costs of this appeal shall be paid by defendants.
Judgment amended and affirmed.